

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-09-275-CR

DAVID CLAYTON RATLIFF                                APPELLANT
A/K/A CLAYTON DAVID SINGLETON
A/K/A DAVID CLAY RATLIFF

V.

THE STATE OF TEXAS                                         STATE

------------

## FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

## OPINION

------------

Appellant David Clayton Ratliff a/k/a Clayton David Singleton a/k/a David Clay Ratliff appeals his conviction for possessing less than one gram of methamphetamine.[1] In three points, he contends that the trial court erred by denying his motion to suppress evidence that he says the police obtained illegally

---

[1]*See* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(b) (Vernon 2010).

and by denying his motion for mistrial based on the State's allegedly improper jury argument. We affirm.

**Background Facts**

A Weatherford resident, Kelly Lindner, called the police because she saw a white car that she did not recognize near her neighbors' residence while her neighbors were gone, and she believed that "something bad was happening." She told the police that people from the car were removing items from her neighbors' garage and putting them in the car. One of the car's passengers was Lindner's neighbors' daughter, Rachel Adams, although Lindner did not know that fact at the time she called the police. Appellant and Bryan Harko were the car's other occupants.

Weatherford Police Department Detective Troy Luecke received a dispatch call regarding the suspicious white car, found it, and saw its three occupants.[2] According to Detective Luecke, appellant, the front seat passenger, was confrontational and agitated when Detective Luecke tried to ask him identification questions. Because Detective Luecke smelled marijuana coming from appellant, he asked appellant to get out of the car, and upon searching appellant, found two

---

[2]The car's driver, Harko, knew appellant because appellant had given him tattoos. Harko said that appellant had called him to pick appellant up from a motel and give appellant a ride to Weatherford in exchange for "[f]orty dollars and some dope."

2

marijuana cigarettes in appellant's pocket.    Thus, Detective Luecke arrested appellant.[3]

After the arrest, Detective Luecke searched the parts of the car "that [appellant] could reach."[4]   During the search, Detective Luecke found a briefcase that contained the following:   three syringes, a pack of rolling papers, a small clear ziplock bag with white residue in it, a spoon with a white crystal substance on it (which field tested positive at the crime scene for methamphetamine), and two papers bearing appellant's name.   Detective Luecke explained that because "they were no longer in sterile packages" at the time he found them, the syringes appeared to have been used.

A Parker County grand jury indicted appellant for possessing less than one gram of methamphetamine; the indictment contained enhancement paragraphs alleging that appellant had several previous felony convictions.   Appellant waived arraignment and pled not guilty.

On the morning of his trial, appellant filed a motion to suppress the evidence that Detective Luecke had obtained.   Appellant contended that the warrantless search was unreasonable under the federal constitution and the

---

[3]Another officer who was at the scene said that he did not smell marijuana coming from appellant, and Harko said the same.

[4]Harko said that although he had his own drug paraphernalia in the car, he gave police consent to search it.

3

Texas constitution and statutes because, among other reasons, Detective Luecke did not have authority to search the car incident to appellant's arrest under *Arizona v. Gant*.[5] Although the motion stated that a pretrial hearing outside of the jury's presence was necessary, there was no such hearing. Instead, after voir dire and before the first witness testified, appellant informed the court that he had filed the motion and that he would bring it to the court's attention at his "first time to object during the [trial]."

During Detective Luecke's testimony, he identified and discussed each item that he had found in the car. The State then offered the items to the court for admission, at which point appellant objected under the Texas and federal constitutions, particularly relying on *Gant*. The court overruled the objection and admitted the evidence. After the evidence was admitted, appellant's counsel asked Detective Luecke several questions about the contents of the briefcase, and the State then asked Detective Luecke further questions about the briefcase's contents without any objection.[6] Herman Carrell, who works as a forensic scientist at the crime lab, testified without objection that he tested the

---

[5]129 S. Ct. 1710, 1723–24 (2009).

[6]State's Exhibit No. 8, a document that Detective Luecke generated and that was titled "Weatherford Police Department Property Receipt," listed appellant as the defendant and described that officers had found "David Ratliff's" briefcase, a white crystal substance, rolling papers, syringes, a silver spoon with methamphetamine residue, and papers containing appellant's name. This exhibit was admitted without a constitutionally based objection by appellant.

4

white substance found by the police and confirmed that it is .05 grams of methamphetamine.[7] Later in the trial, after the State recalled Detective Luecke, appellant again asked him about the particular items that he had found in the briefcase. Then, after the State rested, appellant again moved to suppress the State's evidence on the basis of *Gant.*

After the parties finished presenting evidence and argument, the jury found appellant guilty of possessing methamphetamine, and after the trial court heard evidence regarding his punishment and found some of the enhancement allegations from his indictment to be true, it assessed a sentence of fifteen years' confinement. Appellant filed notice of this appeal.

**Preservation of Error**

In his first two points, appellant contends that the trial court erred by denying his motion to suppress and by admitting the evidence that was obtained from the car. The titles of his two points (which include a page number range of the reporter's record that his points relate to) and the argument within the points indicate that appellant complains about the admission of the physical evidence found by Detective Luecke after appellant's arrest. The State contends that

---

[7]Appellant objected on constitutional grounds to the admission of Carrell's report that showed the result of his test but not to Carrell's testimony regarding the test.

5

appellant has forfeited his complaints about the admission of the evidence. We agree with the State.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 338, 341 (Tex. Crim. App. 2004). Preservation of error is a systemic requirement. *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007).

To preserve error about the illegal seizure of evidence, a defendant must either file a motion to suppress and obtain a ruling on the motion or timely object when the State offers the evidence at trial. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984); *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g); *Thomas v. State*, 884 S.W.2d 215, 216 (Tex. App.—El Paso 1994, pet. ref'd). If the defendant waits until the State offers the evidence at trial, the objection to the evidence must be made before a witness gives substantial

6

testimony about it.  *See Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980) (explaining that an objection to evidence "must be urged at the earliest opportunity"); *Stults*, 23 S.W.3d at 205–06; *Angelo v. State*, 977 S.W.2d 169, 177 (Tex. App.—Austin 1998, pet. dism'd w.o.j.) (op. on reh'g); *see also Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App.) (explaining that "if a question clearly calls for an objectionable response, a defendant should make an objection before the witness responds"), *cert. denied*, 516 U.S. 832 (1995).

In *Tell v. State*, an aggravated robbery case, the defendant attempted at trial to suppress the admission of a ski mask that police officers obtained from his residence without a search warrant or consent.  908 S.W.2d 535, 538, 543 (Tex. App.—Fort Worth 1995, no pet.).  But the defendant allowed a police officer to answer four questions about seizing the ski mask before objecting to the evidence.  *Id.*  On appeal, we concluded that "[b]ecause Tell failed to object at the time the ski mask was mentioned and allowed further questions and answers before finally objecting," he "waived any error in the admission of the ski mask." *Id.* at 544.

Similarly, in *Turner v. State*, the defendant contested the trial court's admission of evidence that a detective had seized from his vehicle after his arrest.  642 S.W.2d 216, 216–17 (Tex. App.—Houston [14th Dist.] 1982, no pet.).  The court of appeals held that the defendant forfeited his objections at trial by allowing the detective to testify "extensively to the arrest and the items found in

7

the search." *Id.* at 217. The appellant did not object to the testimony "but only to the five exhibits." *Id.*; *see also Marini*, 593 S.W.2d at 714 (holding that an objection to the admission of physical evidence—narcotics—was forfeited because the appellant had not objected at trial to the officer's testimony about finding the narcotics); *King v. State*, No. 02-07-00172-CR, 2008 WL 3918051, at *3 (Tex. App.—Fort Worth Aug. 26, 2008, pet. ref'd) (mem. op., not designated for publication) ("When a party objects to the admission of physical drug evidence after a police officer has already testified about finding the drugs without objection, nothing is presented for review.").

As noted above, appellant filed a motion to suppress evidence but did not obtain a pretrial hearing or ruling on the motion. As the following excerpt of Detective Luecke's testimony demonstrates, appellant then allowed Detective Luecke to testify about the evidence extensively before objecting to the admission of the State's physical evidence:

> Q. . . . Detective Luecke, you brought with you a box to court today; is that correct?
>
> A. Yes, ma'am.
>
> Q. What is it?
>
> A. The evidence we removed from the vehicle that day.
>
> Q. Okay. I'm going to show you what I'm going to mark as State's Exhibit No. 2, which is a single baggy that has currently been stapled to four other baggies. So I'm only talking about the baggy

that has State's Exhibit No. 2 on it.  Can you identify the contents of that clear plastic baggy?

A.    It's two marihuana cigarettes.

Q.    And are those the two marihuana cigarettes that you retrieved from the pants of Mr. Ratliff?

A.    Yes.  It has my initials on the envelope.

. . . .

Q.    Once Mr. Ratliff was arrested, then what did you do?

A.    Basically, you know, I observed a backpack and a briefcase sitting behind the passenger seat.

. . . .

Q.    What, if anything, did you locate?

A.    Located three syringes that appeared to have been used, a pack of rolling papers, a small clear ziplock bag containing white residue, a spoon containing white crystal substance on the spoon, and two different papers that contained the name of Ratliff.

. . . .

Q.    . . . Specifically what are the contents of State's Exhibit No. 3?

A.    It's a spoon.  It still has -- you can still see some white residue on the spoon.

Q.    And what's the significance of the white residue?

A.    I believed it to be methamphetamines.

Q.    Why?

9

A. Due to the texture and that I've seen crystal meth and methamphetamines during my time as a patrolman, detective, and SWAT, and K-9.

. . . .

Q. Okay. Finally, I'm going to show you what's been marked as State's Exhibit 7. And if you will identify that for the jury please.

A. It's going to be the paperwork contained in Ratliff's name that was removed from the briefcase.

. . . .

Q. . . . And if you'll take a look at the contents of that and make sure that those are the items that you retrieved from the briefcase from the Rendezvous?

A. This is an envelope contained in the name of Clint Ratliff.

We conclude that, as in *Tell* and *Turner*, along with the other cases cited above, appellant's failure to object at the time Detective Luecke specifically described the physical evidence and explained how he found that evidence forfeited any error associated with his objection to the State's later introduction of the evidence. *See* Tex. R. App. P. 33.1; *Tell*, 908 S.W.2d at 543–44; *Turner*, 642 S.W.2d at 216–17. Thus, we overrule appellant's first and second points.

**Appellant's Motion for Mistrial**

In his third point, appellant contends that the trial court erred by denying his motion for mistrial that he made during the State's jury argument, in which the following colloquy occurred:

[THE STATE]: . . . Now, it's important for you to know that you don't all have to agree on which reason Officer Luecke had to search the briefcase. Nine of you can say, "You know what, I think he smelled the marihuana and I think there was probable cause."

[DEFENSE COUNSEL]: Objection. They have to agree unanimously on each one of the issues. This isn't a selective deal.

THE COURT: Sustained.

[THE STATE]: Three of you can say, "You know what, I don't believe that part but I do believe that consent was given." As long as the total of you that are agreeing is 12, as long as all of you agree that there was a reason for him to search --

[DEFENSE COUNSEL]: Objection. I just objected to that. It's a misstatement of the law. They all have to go down the checklist, and it has to be unanimous. If any one of them has a reasonable doubt, they don't finish.

THE COURT: I'll sustain the objection.

. . . .

[THE STATE]: Again, what I said is that all of you have to agree. Okay? If three of you agree to one reason and nine of you agree to another, it doesn't matter how it's split.

[DEFENSE COUNSEL]: I'm going to object once again. If they don't have a unanimous agreement or if they have a reasonable doubt on one issue, they don't go further. Thank you.

THE COURT: Sustained. And ladies and gentlemen, you have the Charge with you. And it explains the situation.

. . . .

[DEFENSE COUNSEL]: Because the State had persisted three times in telling them what the law is not, I'd ask for a mistrial.

THE COURT: That's denied.

11

When a trial court sustains an objection and instructs the jury to disregard (as the trial court did here) but denies a defendant's motion for mistrial, we must decide whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by improper conduct is "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.* at 77; *see also Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied,* 542 U.S. 905 (2004).

In determining whether a trial court abused its discretion by denying a mistrial, we balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Hawkins*, 135 S.W.3d at 77; *Mosley*, 983 S.W.2d at 259. Here, appellant cannot show that the trial court abused its discretion by denying his motion for mistrial because he has not demonstrated that misconduct, severe or otherwise, occurred.

The court of criminal appeals has "long held that 'error in jury argument does not lie in going beyond the court's charge, but in stating law contrary to the same.' That is, there is no error in correctly arguing the law, even if the law is not included in the court's charge." *State v. Renteria*, 977 S.W.2d 606, 608 (Tex. Crim. App. 1998) (citing *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App.

12

[Panel Op.] 1982)); *Corpus v. State*, 30 S.W.3d 35, 41–42 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding that there was no error when the State argued that two people could jointly possess an object, which was a correct statement of the law, even when the law of joint possession was not included in the jury charge); *Gillis v. State*, 694 S.W.2d 245, 251 (Tex. App.—Fort Worth 1985, pet. ref'd) (holding similarly).  Therefore, if the State's jury argument correctly stated the law and was not inconsistent with the trial court's charge, then it was not improper.

Article 38.23 of the code of criminal procedure states that if the jury has a reasonable doubt that evidence has been obtained in violation of the law, it shall disregard the evidence.  Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005).  Appellant asserts, "[T]he jury was told by the Prosecutor that not all 12 [jurors] had to agree on probable cause, an issue submitted to them[.]  That argument of the Prosecutor was contrary to the requirements set forth in the Court's Charge on that issue."  However, the jury charge did not explicitly inform the jury that each juror had to agree on the particular factual basis for Detective Luecke's search.  Rather, the charge instructed the jury that the search could be supported by either Harko's consent or a "detectable odor of marihuana that Officer Luecke was able to smell," and then later the charge told the jury generally that its "verdict must be unanimous."  The State told the jury that they were required to all agree that Detective Luecke had some basis for the search although jurors

13

could disagree as to which basis supported the search. We conclude that this argument, although supplementary to the charge, was not inconsistent with its explicit language.

As to whether the argument made by the State at trial is contrary to the law, appellant has not cited any authority to show that jurors must be unanimous on the particular facts (between those that could show consent or probable cause) that validate a search, and we have not found any authority that directly addresses the issue. Surely, a jury's verdict in a criminal case must be unanimous. Tex. Code Crim. Proc. Ann. art. 36.29(a) (Vernon Supp. 2009); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *see Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (explaining that "the jury must be unanimous in finding that the defendant committed a specific statutory crime"). However, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly, there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Davis v. State*, 268 S.W.3d 683, 711 (Tex. App.—Fort Worth 2008, pet. ref'd); *see Valdez v. State*, 218 S.W.3d 82, 84–85 (Tex. Crim. App. 2007) (holding that a jury was not required to unanimously decide which two of several alleged prior felony convictions supported the enhancement of the appellant's punishment because the penal code's

14

enhancement provision states only that the State is required to prove "two felony offenses").

For example, in a felony murder case, a jury is not required to unanimously concur regarding which specific felony the defendant committed or attempted to commit in conjunction with the murder. *White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006). Similarly, a jury is not required to unanimously agree on the statutory method of intoxication (between having a blood alcohol concentration of .08 or more or not having normal use of faculties) in a driving while intoxicated case as long as the jury unanimously decides that the defendant was intoxicated. *Price v. State*, 59 S.W.3d 297, 301–03 (Tex. App.—Fort Worth 2001, pet. ref'd).

"[T]he question of what a jury must be unanimous about . . . is determined by the legislative intent of the applicable statute." *Valdez*, 218 S.W.3d at 84. "In divining legislative intent, we look first to the language of the statute. When the meaning is plain, we look no further." *Lomax v. State*, 233 S.W.3d 302, 308 (Tex. Crim. App. 2007) (quoting *Rodriguez v. State*, 953 S.W.2d 342, 353 (Tex. App.—Austin 1997, pet. ref'd)). While article 38.23 allows the jury to resolve factual disputes related to whether evidence was obtained legally or illegally, the article does not express that the jury must unanimously decide *why* the evidence was obtained legally or illegally. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a); *see also Newsom v. State*, No. 10-07-00169-CR, 2009 WL 1163403, at *6–7

(Tex. App.—Waco Apr. 22, 2009, pet. ref'd) (mem. op, not designated for publication) (holding that a jury charge was not erroneous although it permitted a jury to find that a traffic stop was justified without requiring the jury to agree about which of three alleged traffic violations was the basis for the stop). Thus, we hold that the jury was not required to agree about the factual justification to support the legality of Detective Luecke's search as long as all jurors agreed that the evidence was not obtained illegally.

For these reasons, we conclude that the trial court did not abuse its discretion by denying appellant's motion for mistrial because the State's jury argument was not improper. We overrule appellant's third point.

## Conclusion

Having overruled all three of appellant's points, we affirm the trial court's judgment.


TERRIE LIVINGSTON
CHIEF JUSTICE


PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

PUBLISH

DELIVERED:  July 15, 2010

16